IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                              Case Nos.:   4:10cr25/RH/CAS
                                                             4:12cv470/RH/CAS
ALDO RAY WILSON,

          Defendant.

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 65).  The Government

filed a response (doc. 69) and Defendant filed a reply.  (Doc. 70).  Defendant also filed a

"Supplement of Supreme Court Authority and an Actual Innocence Claim Relevant to

the Armed Career Criminal Enhancement Imposed on Him by way of Prior Convictions."

(Doc. 72).  The case was referred to the undersigned for the issuance of all preliminary

orders and any recommendations to the district court regarding dispositive matters.

*See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After

reviewing the record, the court directed the Government to file a supplemental

memorandum and afforded Defendant the opportunity to file a supplemental reply.

They have now done so.  (Docs. 78, 79).  After a careful review of the record and the

arguments presented, it is the opinion of the undersigned that Defendant has not raised

any issue requiring an evidentiary hearing and that the amended § 2255 motion should

be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

On April 14, 2010, Defendant was charged in a single count indictment with

knowing possession of a firearm and ammunition by a convicted felon.  (Doc. 1).

William Rourke Clark, Jr. of the office of the Federal Public Defender was appointed to

represent him.  In late May, the defense moved for a continuance, and the trial was

continued from June 7 until August 2, 2010.  (Docs.  16, 17).   Near the end of June,

Defendant submitted a letter directly to the district court, which the court directed the

clerk to docket, but upon which the court took no further action.  (Docs. 19, 20).  In the

letter, Defendant informed the court that he had asked his attorney to file a motion to

suppress two months earlier, in April of 2010, but counsel had not done so.  (Doc. 20).

Defendant explained in this letter that he did not want the court to remove his attorney,

but he wanted the court to talk to counsel about this matter.  Appended to Defendant's

letter was a copy of a letter from then-assistant state public defender, Tiffany Jones who

represented Defendant on state charges arising out of the same incident.  In her letter,

Ms. Jones advises Defendant that his state charges will be dropped due to the federal

prosecution, and suggests that Defendant's new attorney should be able to have the

evidence against him suppressed, because the arresting officer had no legal right to be

in the place he was, within the curtilage of Defendant's property, when he observed the

gun in Defendant's vehicle.  (Doc. 20 at 2).

The court held a conference with the parties on August 3, 1010, and Defendant again brought up the issue of the motion to suppress.  (*See* doc. 53).  Defendant told the court that he did not want to continue with jury selection at that time, again referencing the fact that he had asked counsel to file a motion to suppress back in April. He mentioned that he had even written the court a letter about this, but counsel had not yet filed the motion.  (Doc. 53 at 4).  In response to Defendant's statement, the court asked counsel to explain the Government's evidence.  Counsel stated that a police officer, in the process of arresting his client after a traffic stop, discovered a firearm in plain view in the vehicle Defendant was driving, and "that's the firearm that Mr. Wilson wants me to file a motion to suppress the evidence."  (*Id*. at 6).  Counsel stated that the traffic stop was conducted after law enforcement ran the tag on the vehicle, discovered it was owned by a person who had been driving with a suspended license, and the officer recognized Mr. Wilson as fitting the description of the owner of the vehicle.  (*Id*. at 6–7).  Defendant interjected a question, asking "how can you stop me in my yard, me and my truck in my yard?"  (*Id*.).  The following exchange then took place:

> MR. CLARK: That is the other issue on – in Mr. Wilson's case, is the fact that the police officer doesn't indicate where he stopped him, other –
> THE DEFENDANT: He never stopped me nowhere.
> MR. CLARK: – than an address on Volusia Street.  Mr. Wilson says he was in his yard on Volusia Street but at a different address.  I think the testimony will probably resolve that issue, but –
> THE COURT: Mr. Wilson, you were behind the wheel?
> THE DEFENDANT: No, sir.  I'm standing in my yard.  My truck is locked up. They arrested me and took my key and checked my truck.
> THE COURT: And he's in his own yard.

(*Id.* at 7–8).  At this point the court asked the Government what the officer said was the

basis for stopping Defendant.  The Government responded by summarizing the

evidence it would expect to present as follows:

> The officer will testify, in his routine patrol at a traffic light, or whatever, he
> will routinely run tags of vehicles around him.  The evidence that the
> government would anticipate putting on at trial is that in this instance, the
> defendant's vehicle was directly in front of the officer's vehicle on Volusia
> Street.
> The Defendant stopped – it's a two-lane street with a solid yellow line–and
> he was going to turn into a driveway.  That driveway was closed by a
> fence.  The defendant had to stop, exit his vehicle, leave it in the lane of
> traffic, when the officer parked behind him, and crossed the street to open
> the fence.
> During this period of time, the officer ran the tag.  In fact, the anticipated
> testimony, the defendant waved at the officer when he walked across the
> street to open the gate.
> During this period of time, certain, I believe all, but at least some of the
> vehicles with the Tallahassee Police Department were equipped with a
> mobile data terminal.  That information came back rather quickly.
> The officer can more accurately provide the information to the court; but,
> in essence, during the period of time in which Mr. Wilson crossed the
> street, opened the fence, got back in his vehicle and turned into the
> driveway, the officer was going to pull forward at that point, now his lane
> being unobstructed by the Defendant's vehicle; and, as he began to pull
> forward, he was alerted in a matter of seconds or so that the registered
> owner of that vehicle was suspended or habitually-revoked based on DUI.

(Doc. 53 at 8–9).  The court then reiterated its understanding that Defendant had

wanted counsel to file a motion to suppress and counsel had not done so, but that in all

other respects the representation had been adequate.  Defendant confirmed this.  (*Id.* at

9).  There was no further discussion of the motion to suppress.

   The case was tried before a jury the following week.  The presentation of

evidence concluded in one day, and the jury returned to continue deliberations the

following day.  Shortly thereafter reconvening, the jury sent a written communication to

the court which read:

> 1.  Did either officer have probable cause to search the vehicle of the defendant?
>
> 2.  What constitutes probable cause?

(Doc. 55 at 2).  The court responded as follows:

> TO THE JURY:
>
> The issue in the case is whether the defendant knowingly possessed the
> gun or ammunition.  You must decide that issue based on the evidence
> that was introduced during the trial and the instructions I have given you.
>
> If, in deciding that issue, you believe it relevant to consider the information
> the officers had when they found the gun, then in deciding what
> information they had, you must rely solely on the evidence introduced
> during the trial.  They had no other information.
>
> If, in asking about probable cause, you are considering whether it was
> proper for an officer to look in the truck and find the gun, then you are
> instructed as follows.  First, whether it was legal for an officer to look in
> the truck is an issue for me, not for you.  Second, if it happened as the officers
> testified, it was legal.  The evidence introduced during the trial was
> properly introduced.  Whether to believe the evidence, and whether the
> evidence establishes beyond a reasonable doubt that the defendant
> knowingly possessed the firearm or ammunition, are issues for you alone
> to determine.  "Probable cause" is not a concept that is relevant to your
> deliberations in any way.

(Doc. 32 at 2).  Neither side objected to the court's response to the question.  (Doc. 55

at 2)  Less than thirty minutes after receiving the court's response, the jury returned a

verdict of guilty.  (Doc. 55 at 2, 4; doc. 33).

The PSR calculated that Defendant was a Career Offender pursuant to § 4B1.1

U.S.S.G., and had a criminal history category of VI.  (*See* doc. 41).  The applicable

advisory guidelines range was 235 to 293 months.  Defendant was sentenced at the low

end of this range to a term of 235 months, despite the court's finding that Defendant had given untruthful testimony with respect to the offense conduct.  (Doc. 56 at 9–10).

Defendant appealed, contending that his sentence was procedurally unreasonable.  (*See* doc. 60 at 4).  The Eleventh Circuit Court of Appeal affirmed the sentence.[1]  (*Id.*).

Defendant timely filed the instant § 2255 motion, raising a single ground for relief. He contends that counsel was constitutionally ineffective when he failed to file a motion to suppress, which would have resulted in the exclusion of the only evidence against him.  The Government claims that Defendant's motion is procedurally barred and without merit.  He later filed a supplement in which he seeks to challenge the application of the ACCA.  The Government asserts that such a claim is procedurally and temporally barred.

## LEGAL ANALYSIS

<u>General Standard of Review</u>

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

---

[1] The ECCA also remanded for the limited purpose of correcting an error in the written judgment.  The court's statement of reasons, which read that "a lesser sentence is not statutorily authorized," conflicted with the court's statement during sentencing that it had given "substantial consideration whether [a statutory minimum sentence of] 180 months would be adequate."   (Doc. 56 at 8).   The ECCA directed that the judgment be amended to reflect the court's understanding that it could vary below the low end of the guideline range.  (Doc. 60 at 4–5). The court amended its statement of reasons accordingly.  (Doc. 59).

attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8

(11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of

constitutional rights and for that narrow compass of other injury that could not have

been raised in direct appeal and would, if condoned, result in a complete miscarriage of

justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations

omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v.

Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged

constitutional violation "has probably resulted in the conviction of one who is actually

innocent . . . ."

The law is well established that a district court need not reconsider issues raised

in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United

States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340,

1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, it cannot be

re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343

(quotation omitted).  Broad discretion is afforded to a court's determination of whether a

particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16

(1963) ("identical grounds may often be proved by different factual allegations . . . or

supported by different legal arguments . . . or couched in different language . . . or vary

in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct

appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel, which Defendant attempts to raise herein, can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Franklin, 694 F.3d 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v.

Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000);

Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland,

the court may dispose of an ineffective assistance claim if a defendant fails to carry his

burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States,

720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th

Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot

meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of

Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's

performance in a highly deferential manner and "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance."

Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at

689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000)

(discussing presumption of reasonableness of counsel's conduct); Lancaster v.

Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not

entitled to error-free representation").  Counsel's performance must be evaluated with a

high degree of deference and without the distorting effects of hindsight.  Strickland, 466

U.S. at 689.  To show counsel's performance was unreasonable, a defendant must

generally establish that "no competent counsel would have taken the action that his

counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008)

(citations omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must generally establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v.

United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing

Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d

1443, 1445 (11th Cir. 1983)).

Although section 2255 mandates that the court conduct an evidentiary hearing

"unless the motion and files and records conclusively show that the prisoner is entitled

to no relief," a defendant must support his allegations with at least a proffer of some

credible supporting evidence.  *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th

Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring

to "our clear precedent establishing that such allegations are not enough to warrant an

evidentiary hearing in the absence of any specific factual proffer or evidentiary

support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an

evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); <u>Ferguson v. United States</u>, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004); <u>Tejada</u>, 941 F.2d at 1559; <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  <u>Lynn</u>, 365 F.3d at 1239. Finally, if only legal issues are presented, the court will dispose of the § 2255 motion without a hearing.

<u>Defendant's claim for relief</u>

Defendant's lone claim for relief in his amended motion is that counsel was constitutionally ineffective because he did not file a pre-trial motion to suppress.[2]

When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, in order to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986); <u>Zakrzewski v. McDonough</u>, 455

---

[2]  The Government's assertion that this claim is procedurally barred is misguided. In fact, the court speculates that section IIB of the Government's memorandum, in which it argues that Defendant's claim is procedurally barred (doc. 69 at 13), was part of a response in another case that was erroneously included in its response to the instant motion.  There are no specific facts linking the Government's procedural bar argument to the case at bar, and an ineffective assistance of counsel claim is not procedurally barred.  (Doc. 69 at 13).  Furthermore, the Government cites case law holding that ineffective assistance of counsel claims are properly raised by a § 2255 motion, regardless of whether they could have been raised on appeal. <u>Massaro v. United States</u>, 538 U.S. at 503; <u>United States v. Bender</u>, 290 F.3d at 1284.

F.3d 1254, 1260 (11th Cir. 2006).  Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded.  Jones v. United States, 224 F.3d 1251, 1259 (11th Cir. 2000); Huynh v. King, 95 F.3d 1052, 1058–59 (11th Cir. 1996); Thomas v. Newsome, 821 F.2d 1550, 1552 (11th Cir. 1987); see also Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005).

In this case, Defendant claims that at the time of his initial arrest for driving with a suspended license, his vehicle was parked within his fenced-in yard adjacent to his house, with all the vehicle doors secured and locked.  (Doc. 65-1 at 5).  Defendant claims that after his arrest, Officer Lee Greenfield entered his yard without either consent or a warrant and shined his light into Defendant's vehicle, at which point Greenfield discovered the gun.[3]

Defendant notes that Tiffany Jones, the attorney who represented him in state court on charges arising out of the same incident, informed him that he had a viable suppression issue because officers had entered the curtilage of his property without a warrant, consent, or exigent circumstances in violation of the Fourth Amendment.[4]

---

[3] Defendant references the deposition of Lee Greenfield, taken April 9, 2010 in the case of State of Florida v. Aldo R. Wilson, which is attached as an exhibit to his motion.  (Doc. 65-1 at 12–20).  Portions of the deposition appear truncated, as the text does not "flow" from one page to the next, but Officer Greenfield stated therein that there was a fence around Defendant's yard but not around the driveway.  (Doc. 65-1 at 15). This appears to contradict Greenfield's trial testimony that when he arrived the vehicle was parked inside the property, through a fence, on Defendant's driveway.  (Doc. 54 at 83, 88, 90).

[4] Ms. Jones' correspondence to Defendant dated April 20, 2010 cited two state cases.  State v. Richard, 420 So.2d 303, 306 (Fla. 1982) and Rodriguez v. State, 964 So.2d 833, 837 (2d DCA 2007).  (Doc. 20 at 2).

Ms. Jones has signed an affidavit which Defendant submitted in support of his motion. (Doc. 65-1 at 22–23).  In her affidavit, Ms. Jones notes that before she could file the motion to suppress, Defendant's case was "transferred (sic) to federal court."  (Doc. 65-1 at 22).  Ms. Jones relates that she received a letter from AFPD Clark, requesting that she call him with respect to Defendant's case.  She called AFPD Clark the same day and they discussed Defendant's case and Ms. Jones' research regarding the motion to suppress.  (*See* doc. 65-1 at 23, 24).

From Defendant's motion, it appears that, in response to Defendant's requests that counsel file the motion to suppress, his attorney declined to do so because of the application of the "plain view" doctrine.  (Doc. 65-1 at 6–7).  The "plain view" doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent. United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006) (citing  Horton v. California, 496 U.S. 128, 136–37 (1990); United States v. Hromada, 49 F.3d 685, 690 n. 11 (11th Cir.1995)).  "The plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located."  Smith, 459 F.3d at 1290 (quoting United States v. Rodgers, 924 F.2d 219, 221 (11th Cir.1991)).  Defendant's contention is that officers had no legal right to be in his yard, which was within the curtilage of his home, and therefore, he asserts, even if the gun was in "plain view," a motion to suppress would have been meritorious.

The Government's initial response did not contain any meaningful analysis of this issue.  The Government stated that "Mr. Clark did contact Ms. Jones ... but he found there were no merits for the filing of a motion to suppress as this was a case in which the gun was in plain view."  (Doc. 69 at 14).  It did not discuss the location of the traffic stop or officers' presence on Defendant's property, and it did not attempt to refute, or even address, Defendant's contention that the plain view doctrine was inapplicable because the officer had no legal right to be where he was when he observed the gun. In light of this lack of analysis, the court noted that the Government's statement that it "is left wondering just where the prejudice to Petitioner is supposed to have occurred" (*see* doc. 69 at 17) is unsupported because if the seizure of the gun was unlawful as Defendant claimed, there would have been no evidence to proceed in this case.

As such, the Government was directed to file a supplemental response in which it analyzed the merits of Defendant's ineffective assistance of counsel claim under Kimmelman, including a discussion of the applicability of the plain view doctrine to the facts of this case.[5]  (*See* doc. 73).[6]

In its supplemental response, the Government asserts that "Defendant improperly relies on the apparent strategy of his former state counsel as evidence of his trial counsel's inefficient performance."  (Doc. 78 at 3).  It notes that Mr. Clark discussed the potential suppression issue with Ms. Jones, but that Clark concluded the motion

---

[5]  The court suggested that the Government might wish to file an affidavit from Defendant's former attorney, but no affidavit has been submitted

[6] The Government was also directed to respond to Defendant's request to supplement his motion to add a claim that he is actually innocent of the Armed Career Criminal Enhancement, as it had not previously done so. (*See* doc. 72).

would be meritless as it was a clear "plain view" case.  (Doc. 65-1 at 6, 22–23).  The

Government then argues that counsel's failure to pursue suppression was not the result

of negligence, inexperience or a lack of preparation, but rather a conclusion reached

after careful consideration of the facts and the law, despite his client's insistence.  (Doc.

78 at 4).  Under these circumstances, the Government argues, counsel's decision was

not objectively unreasonable.

Defendant has long contended that there was no actual traffic stop, an assertion

he continues to make, and which the Government did not squarely address.  (*See* doc.

53 at 7, doc. 54 at 164,  doc. 79 at 3, 6, 7, 13).[7]  Absent a traffic stop, his claim that the

search was unlawful would be more persuasive.  However, the record strongly suggests

that the district court did not credit his version of events, which would have directed its

ruling on a motion to suppress.

First, the undersigned notes the district court's response to a jury question

regarding whether officers had probable cause to search Defendant's vehicle.  (Doc.

32).  The court stated that "if [the search] happened as the officers testified, it was

legal." (*Id.* at 2).  The court did not offer any comment on whether the search would

have been legal if it happened as Defendant testified.  Second, at sentencing, the court

stated that Defendant was driving without a license, a seeming nod to the veracity of the

officers' testimony that would support the legitimacy of a traffic stop under the

circumstances.  (Doc. 56 at 8).  Finally, the court expressed its opinion, also at

---

[7]  The facts set forth in Defendant's affidavit in support of his reply to the supplemental response
closely mirror his testimony at trial.

sentencing, that Defendant gave untruthful testimony about his possession of the

firearm and/or the events in question.  (*Id.* at 9).  Taken together, it is reasonable to infer

that the court did not credit Defendant's version of events, including Defendant's

assertion that there was no "traffic stop."

      Accepting then, that officers were within their right to conduct a traffic stop, the

court next considers whether it was legal for the officers to be on Defendant's property.

Law enforcement is permitted to enter residential property, including portions that would

be considered part of the curtilage, on official police business, which "business" in this

case was to arrest Defendant for driving with a suspended license.  *See* Coffin v.

Brandau, 642 F.3d 999, 1012 (11th Cir. 2011) (*citing* Wayne R. LaFave, *Serch and

Seizure: a Treatise on the Fourth Amendment* § 2.3(f) (4th Ed. 2004)); *see also* United

States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006) (the Fourth Amendment is not

implicated by entry upon private land for legitimate police purposes unconnected with a

search of the premises); United States v. Burch, 466 F. App'x 772, 774 (11th Cir. 2012)

(it was constitutionally permissible for officers to enter Defendant's property to issue him

a citation for a violation of state law).  This is because a portion of the curtilage, being

the normal route of access for anyone visiting the premises, is only a semi-private area.

Coffin, 642 F.3d at 1012 (citation omitted).


      Once officers were validly on the premises, their use of a flashlight to illuminate

the interior of a car, even without probable cause to search the car, "trenche[s] upon no

right secured . . . by the Fourth Amendment."  United States v. Dunn, 480 U.S. 294, 305

(1987) (*citing* Texas v. Brown, 460 U.S. 730, 739–740 (1983)).  After observing the

firearm in plain view, probable cause existed for them to conduct a search and .  *See*

United State v. Brown, 498 F. App'x 940, 941 (11th Cir. 2012) (*citing* United States v.

Spoerke, 568 F.3d 1236, 1249 (11th Cir. 2009)).

   Defendant has not shown that his fourth amendment claim has merit, and

therefore he has not shown that counsel was constitutionally ineffective for his failure to

file a motion to suppress.   Kimmelman, 477 U.S. at 375; Zakrzewski, 455 F.3d at 1260.

He is not entitled to relief on this claim.

   Defendant's supplemental claim

   In a supplemental pleading filed on May 16, 2014, Defendant purports to bring an

entirely new claim, contending that he is actually innocent of the ACCA enhancement.

In support of this assertion he cites numerous Supreme Court decisions, including

Johnson v. United States, 130 S.Ct. 1265 (2010), Shepard v. United States, 544 U.S.

13 (2005), Carachuri-Rosendo v. Holder, 130 S.Ct. 2577 (2010), Lopez v. Gonzales,

549 U.S. 47 (2010), Moncrieffe v. Holder, 133 S.Ct. 1678 (2013), and Descamps v.

United States, 133 S.Ct. 2276 (2013), as well as the recent decision in Johnson v.

United States, 135 S.Ct. 2551 (2015) ("Johnson 2015"). (Doc. 72 at 2, doc. 79 at 7).

   Title 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA") provides that a

person who has three previous convictions for a violent felony or a serious drug offense

or both is subject to a mandatory minimum fifteen year sentence.  Serious drug offenses

may arise under state or federal law, and the definition of a serious drug offense

includes a State law offense involving distributing or possessing with intent to distribute

a controlled substance for which a maximum term of imprisonment of ten years or more is prescribed by law.  18 U.S.C. § 924(2)(A)(I).  The statutory definition of a violent felony under ACCA is an offense that either (1) "has as en element the use, attempted use, or threatened use of physical force against the person of another" or (2) is burglary, arson, or extortion, involves the use of explosives *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*"  18 U.S.C. § 924(2)(B)(i) and (ii).  The Supreme Court recently ruled that the italicized language, known as the "residual clause," violates the Constitution's guarantee of Due Process due to vagueness.  Johnson v. United States, 135 S.Ct. 2551 (June 26, 2015).

Defendant's PSR reflects that he received the ACCA enhancement based on five prior state convictions for burglary, robbery, vehicular manslaughter, sale of cocaine, and aggravated battery with a deadly weapon. (Doc. 41, PSR ¶ 21).  He now contends that several of these convictions were not ACCA qualifying convictions, and also, that because the court used the residual clause of ACCA to determine that he had three prior qualifying convictions, he should be resentenced without the enhancement.

The Government argues that Defendant's claim is procedurally barred because he did not raise this issue on appeal, despite the availability of the decisions in Johnson v. United States and Shepard v. United States, which were decided in 2010 and 2005 respectively.  The Government further argues that Defendant's claim is time barred because it neither was raised it within one year from the date that his conviction became final nor relates back to the claim raised in his original motion.

Defendant attempts to avoid the procedural bar by contending that he is actually innocent of the ACCA enhancement.  The court notes that at least one court has addressed a similar claim on the merits, finding "no clear precedent from the Eleventh Circuit on whether the actual innocence exception should be applied in the context of ACCA enhancements."   Jackson v. United States, 923 F. Supp.2d 1334, 1337 (M.D. Fla. 2013).   However, in Jackson, the defendant's claim was based on Johnson v. United States, 559 U.S. 133 (2010) and was filed within one year from the date of that decision.  Therefore, untimeliness was not an issue as it is in this case.

Title 28 U.S.C. § 2255(f) imposes a one-year time limitation on the filing of motions under this section. Rule 2(b) of the Rules Governing § 2255 Proceedings requires that a § 2255 motion specify all the grounds for relief available to the moving party and state the facts supporting each ground.  The summary of facts provides a basis to determine whether the new claim, which is proposed to be included in an amendment to the motion, arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original motion. Fed.R.Civ.P. 15(c)(2).  If it does, and if the initial motion was timely, the amendment containing the new claim will also be timely because it relates back to the original motion.  In Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000), the court held that in order to relate back, claims in an amended or supplemental § 2255 motion must arise from the same set of facts as the original claims, not from separate conduct and occurrences in both time and type.  See also Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003); Dean v. United States, 278 F.3d 1218 (11th Cir. 2002); United States v. Espinoza-Saenz, 235 F.3d 501,

503-05 (10th Cir. 2000); United States v. Pittman, 209 F.3d 314 (4th Cir. 2000); United

States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); United States v. Duffus, 174 F.3d

333, 337 (3d Cir. 1999).  Thus, Defendant's claim that his sentence was improperly

enhanced under ACCA, citing Johnson (2010) and Shepard, does not relate back to his

original claim and it is untimely.

Defendant's attempts to rely on Descamps as the basis for relief are unavailing.

Even if his claim was filed within one year from the date of that decision, as the

Government notes that the Eleventh Circuit has recently held that Descamps is not

retroactively applicable on collateral review.  King v. United States, Case No. 13-13693,

2015 WL 1898394 (11th Cir. Apr. 28, 2015) (Descamps was not a new rule retroactively

applicable on collateral review as it merely applied prior precedent rather than limiting

the type of convictions that qualify as violent felonies or crimes of violence) ; *see also*

Wilson v. Warden, FCC Coleman, 581 F. App'x 750, 753 (11th Cir.2014) (per curiam)

("The Supreme Court itself has not expressly declared Descamps to be retroactive to

cases on collateral review. Moreover, Descamps was decided in the context of a direct

appeal, and the Supreme Court has not since applied it to a case on collateral review.").

One other potential avenue for relief remains: the Supreme Court's recent

decision in Johnson v. United States.  Johnson, which was released after the

Government filed its supplemental response, held that the residual clause of ACCA was

unconstitutional.  The Johnson Court did not expressly address the retroactivity of

Johnson or its availability as a basis for collateral relief.  However, the Eleventh Circuit's

King decision, upon which the Government relied, suggests that it will be.  *See* King,

2015 WL 1898394, at *4 (noting that Supreme Court decisions construing the phrases

"violent felony" or "crime of violence" which thus limit the types of convictions that qualify

as such pronounce new substantive rules) (citing Zack v. Tucker, 704 F.3d 917, 925–26

(11th Cir.), *cert. denied* 134 S.Ct. 156 (2013)).  Therefore, the court will next review the

record to determine whether, after Johnson 2015, Defendant still has the necessary

predicate convictions required for application of the ACCA enhancement.

      As noted above, there were five offenses listed in Defendant's PSR as predicates

for the application of the ACCA: burglary, robbery, vehicular manslaughter, sale of cocaine,

and aggravated battery with a deadly weapon.  (Doc. 41, PSR ¶ 33).  Any offenses that

were determined to be qualifying offenses pursuant to the residual clause are no longer

properly considered to be predicate offenses under Johnson (2015). Defendant has at most

two such offenses.  Burglary is specifically enumerated as a predicate offense under 18

U.S.C. § 924(2)(B)(ii).  "Sale of cocaine" is a State law offense involving distribution of

controlled substances, an enumerated qualifying offense under 18 U.S.C. § 924(2)(A)(ii).

Finally, aggravated battery with a deadly weapon is an offense that "has as an element the

use, attempted use, or threatened use of physical force against the person of another" as

set forth in 18 U.S.C. § 924(2)(B)(i).  Thus, even if Defendant's convictions for robbery and

vehicular manslaughter were included as predicate ACCA offenses only by virtue of the

now defunct residual clause, Defendant had three prior convictions that were determined

to be ACCA predicates without regard to this clause, and Johnson offers him no relief.

Because a challenge to the district court's consideration of these three offenses as ACCA

predicates is time barred, Defendant is not entitled to relief.

Conclusion

Based on the foregoing, the court finds that Defendant has not shown that he is entitled to relief on any of the claims raised in his motion or supplement, or that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2);  Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The amended motion to vacate, set aside, or correct sentence (doc. 65) be

**DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 27th day of July, 2015.


/s/ Charles A. Stampelos_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**